OaRUTHBRS, J.,
delivered the opinion of the Court.
Appeal from a decree, against the complainant dismissing his bill for -want of jurisdiction in the Chancery Court at Newport, for Cocke county. The Chancellor was of opinion that the case was cognizable in a Court of Law, alone, by an action of ejectment, and, therefore, a Court of Equity could give no relief, nor entertain the case. And this is the first question.
Facts: The complainant and his two brothers, William and Gfeorge, were the joint owners of a large tract of land in “Dutch Bottom,” on French Broad river, Cocke county, by descent from their father, who died in 1831, and by purchase. They held it in common until 1839,'when they agreed upon a partition in writing, signed by the parties, describing and setting apart the share of each; and after that held in severalty, according to the partition. The writing was not very formal, nor ever registered. It specified the boundaries between them with sufficient certainty, but did not expressly pass the title of each to the other. But it was always and is yet acknowledged by them as a valid and binding division, and the ownership and several possession were regulated by it. The joint debts against them were at the time very heavy, which were, as is alleged, mainly incurred for portions of said lands which they had purchased. The pressure of these debts was so heavy upon them that, in 1842, they found it necessary to secure their creditors by a deed of trust upon the land. This was made to Boardman, as trustee, for the benefit of himself and all other creditors, to the amount of twelve or fifteen thousand dollars. All three signed the deed of trust, which covered the whole of the land without any regard to the partition, or reference to it in the deed. By the exertions of the parties, with the indulgence of the trustee and beneficiaries, the debt was reduced, by 1847, to about six thousand dollars, without any sale of the property. At that time the complainant, whose health had declined, and his mind affected, as it is *32 stated, went off to the South with a small drove of horses. He was expected to return in a few weeks, but did not do so for seven years. Without any apparent cause for it, but eccentricity of character, he kept his abode and movements secret, and had no correspondence with his mother, brothers, or friends. A rumor very soon got out that he was dead, and it seems to have been believed by his brothers and the neighbors generally. When he left he verbally authorized his brother, William, to take charge of and manage for him his property, real and personal, and apply the stock and increase to the common debts. On the 15th of February, 1849, about sixteen months after complainant left the country, the mortgage debts still remaining unpaid, under the supposition, as they allege, that he was dead, and his lands had descended to his two brothers and his mother, they made a sale of the most valuable portion of it to the Taylor brothers, for |54,0 0 0, which, or the larger portion of it, as is recited in the bond for title that day executed by the three, was to be paid to the beneficiaries in the deed of trust, of 1842. In October, 1854, the trust debts having been paid by the Taylors, according to contract, a deed in fee, with warranty, was executed by the said William, George, and Esther Carter to the Taylors, in pursuance of the bond. Just before that was done, satisfactory information had been received that complainant was alive, of which both parties were apprized. He soon after returned, and filed this bill the next January, 1855. The object of the bill is to settle up the whole matter of the trust with his brothers, Boardman, the trustee, and the Taylors for the payments they have made of the trust debts; to have an account of rents and profits against his brothers and the Taylors for the use and possession of his land, by each, and to vacate the deed made by his brothers and mother without authority, of his land, and upon a full adjustment of the rights and equities of all the parties to have his land restored to him.
He instituted an action of ejectment against the Taylors contemporaneously with the filing of the bill. He was forced to elect, by order of the Court, in which tribunal he would *33 proceed. He decided in favor of the Court of Equity, and his action of ejectment was dismissed. A demurrer to his bill was disallowed, with permission to rely upon it in the answer. Upon the final hearing the hill was dismissed upon the ground that a Court of Equity had no jurisdiction, hut his remedy, if any he had, was at law. Upon the correctness of this opinion of the Chancellor, the argument has been made here. It seems very clear to us that his Honor erred,, and that it is a case of equitable jurisdiction, on various grounds.
1. The legal title of the complainant passed into Boardman by virtue of the deed of trust, or mortgage, of 1842. Technically, it could only re-invest by a re-conveyance of the trustee, or by decree upon foreclosure. But it has been held, and is well settled, that it cannot be set up against the mortgagor after the debts secured by it are paid off by him, even at law ; hut if a stranger to the deed had paid it off, he would be regarded as assignee, and might use it for his protection in a suit brought against him for the land. This is decided in the case of Peltz, v. Clark, 5 Peters, 482. It is not then the payment of the mortgage debts that avoids the technical difficulty, and vacates the mortgagee’s legal title, hut it is the payment by the mortgagor. In which case, the debt being extinguished, the security for it is as if it never had been, and the title returns to the former owner. Not so, in reason or in law, where the payment is by a stranger to the deed. In that case the mortgage is bought in by him with the debt, and still stands as a security for it. That w'as the case here. The Taylors paid $2,800 of the mortgage debts, and by that are substitued to the rights of the creditors. The title would still remain in the trustee, Boardman, for their security to the extent of their payments. Erom this it must follow that complainant could not have succeeded in his action of ejectment, as the outstanding mortgage could have been used by the Taylors as an ample protection against him. But, independent of that, the mortgage was not in fact fully paid off. One of the debts, amounting to something less than one hundred dollars was still unpaid, and is yet, from all we see. True *34 this was -a debt to the trustee, and it seems he did not desire the benefit of the security of the mortgage, but he had not relinquished or re-conveyed.
The remedy at law was, therefore, closed against complainant. But he certainly had a right to come into a Court of Equity to have the mortgage foreclosed, and the rights of all the parties adjusted.
The defendants would be entitled to a lien upon the land for the amount they had 'paid towards the debts, for they are regarded as the assignees of the mortgage creditors, entitled to stand in their shoes, and have the advantage of their securities. But they would, of course, be chargeable with rents for the time they have been in possession of the land. The other defendants, George and William Carter, would be liable to account for the use of the land by them, and whatever they may have paid of the debts out of the effects of the complainant. In this the Taylors are not complicated; but having become equitable assignees of the mortgage in part, they are so connected with the matters as to be proper parties.
Another ground might be stated, under this head, to sustain the jurisdiction of a Court of Equity. The partition made in 1839, though in writing, so as to avoid the statute of frauds? does not, perhaps, create a perfect legal title, as it does not purport to convey to each of the tenants in common, from the others, a right in severalty to the portions allotted to each. However this may be, there can be no doubt but that an equitable right in severalty is created by the writing, and a Court of Equity would make it perfect by investing and divesting the legal title in conformity with the written agreement of partition. They held the perfect legal title in common then, unincumbered, and the only object of the deed of 1839, between them, was to sever their joint interest, and. designate the one-third to which each should be entitled. This is clearly and explicitly done, and to it no objection is yet made, and a Court of Equity will carry it out. The joint mortgage,, upon the whole, has no other effect than to encumber the whole— the one-third of each, alike, for the common debt. Here, then, *35 is a proper matter for a Court of Equity to adjust, by apportioning the mortgage debts, inclusive of those paid by the Taylors, among the three, so as to make them equal in the burthen upon a final settlement.
2. The Taylors are in possession without title, as the brothers of complainant who sold and conveyed to them, it is clear, had no right to convey his land. But they connect themselves with the matter by the payment of the secured debts, and by substitution to the rights of the creditors under the mortgage.. So, although they have no rights under their purchase, yet they have under the mortgage. Their interest is to the extent of their payments, and no further. The complainant has a right to bring them into a Court of Equity for a discovery of the amount of their payments, and the benefits they have received from the trust property, by its use, or otherwise. So he has also a right to call upon his brothers, the other defendants, for the same purpose. Eor all this a Court of Chancery is the proper forum.
3. He has a right to come into this Court to clear his title of the clouds resting upon it by the deed to the Taylors, as, well as the mortgage deed, even if it had been fully paid off.
Other grounds of jurisdiction might be stated, but they need not, as the foregoing are sufficient.
It is contended that a Court of' Equity will not entertain a bill for partition until the legal title is 'settled. But this is not a bill for partition. It is to settle equities in relation to land already partitioned, at least in view of a Court of Chancery.. But even where the object is to partition, but the titles are equitable, or there are equities to settle, a Court of Equity may be resorted to for this purpose; and having done so, will decree partition under the same bill. 1 Story’s Eq., § 650, and the following sections.
Having settled the question of jurisdiction, and determined to entertain the case for relief, there can be but little difficulty in drawing up a decree for that purpose.
The proper accounts will’ be ordered, for which the cause will be- remanded.
*36 With the details of the decree this .opinion need not he encumbered. They are sufficiently indicated in what we have said, and will, doubtless, be readily agreed upon by counsel under the verbal directions of the Court.